We'll hear the next case on the calendar, Sam Prado. Good morning, Your Honors. May it please the Court, Dwayne Loft on behalf of Appellants. Let me wait one second as people are leaving. Thank you. Thank you. Thank you. Your Honors, this Court has been fairly clear that in exercising discretion under 28 U.S.C. 1782, the district court should consider the effects of their decisions on the procedural parity between the parties in the foreign litigation at issue. Here, the district court abused its discretion in rejecting a request for reciprocal discovery without conducting any parity analysis. But when did you first make the request for a reciprocal discovery? It has been made from the outset of the case, first made in the motion to quash the 1782 subpoenas. The issue was deferred for decision by the district court. The district court said in denying the motion to quash that the reciprocal discovery she would not consider at this time because she had not been presented with specific requests for reciprocal discovery. Accordingly, in a subsequent motion to compel by the Petitioner, after additional meet and confer on the scope of the subpoenas, the Respondents again renewed their motion for reciprocal discovery, and in that context, the magistrate judge said that it would rule on reciprocal discovery in a subsequent decision. Haven't we, I mean, haven't courts generally been given wide discretion with respect to discovery under 1782? And if that's so, how can we then require more with respect to reciprocal discovery? Certainly, courts have been given wide discretion under 1782. But it is also clear, and this Court has said, that a district court will abuse its discretion under 1782 if it fails to consider the proper factors that this Court, that the Supreme Court has outlined for how that discretion should be exercised under 1782. Discretion with respect to reciprocal discovery? That is our submission, Your Honors. Well, I understand that's your submission. Is that what the case law says? The case law says that the district court should consider the effect of its decisions in the 1782 context on the procedural parity of the parties in the foreign cases. When presented with a correct request for reciprocal discovery, procedural parity should be the touchstone. So the statute, as I read it, and please correct me if you think I'm wrong, requires or enables the use of discovery opportunities here for use in a proceeding. That's correct. Right. What was your client going to use this? What proceeding was going on that your client was involved in? Our client was involved, was the respondent, was the defendant, essentially, in an ICC arbitration. Right. And then the 1782 request was about the Spanish litigation, right? From the outset of the — that's correct. The Spanish litigation was the specific proceeding that the Petitioner invoked in making an application for 1782. Your client was involved in that? Our client is the board of — is on the board of directors of the company that was the defendant in that case, but was not named parties in that Spanish litigation. He was not involved. Your client was not involved. Not a party. Not a party. Not a party. But we submit that the standard is not whether the applicant for reciprocal discovery is a party in the foreign litigation. The test should be whether they have a sufficient interest, like they would meet the interested party standard for — What does the statute say about the use of the discovery? Well, the statute, as interpreted by this Court's decision in Accent Delight, says that once discovery is obtained for one particular foreign proceeding, it can be used for other foreign proceedings. But Accent Delight also says, We have previously declined to read into Section 1782 categorical restrictions that lack textual support when district courts in their discretionary review adequately can address the concerns raised. And that was in the context of analyzing the statute, 1782. The Court made clear in Accent Delight that the district courts maintain ongoing discretion about how discovery under the statute should be used. There are factors that guide that discretion, and we submit that one of the factors is procedural parity in the foreign cases. Accordingly, when a request for reciprocal discovery is made, procedural parity should be considered. And it was — But, I mean, I think the problem is that there's a Spanish litigation. They ask for discovery that they can use in that litigation. Your client's not a party to that litigation. You're saying because this discovery might be used in the ICC litigation, then the discovery as a matter of parity, right? That's correct. But it's not just that the discovery might be used in the ICC arbitration. From the outset of the 1782 proceedings, the appellee reserved the right to use the discovery in the ICC arbitration. We made a request that the Court foreclose the ability of the appellee to use the discovery in the ICC arbitration, and the district court denied that request. Accordingly, the district court should have therefore considered, when we made a request for reciprocal discovery, the effect on procedural parity across the foreign litigation at issue. There's nothing in this Court's precedent that suggests that the parity analysis should be limited to the foreign proceeding that was the original basis for the 1782 decision. How about the statute itself, which says for use in a proceeding? Correct. And we're not arguing that there should be some limit on the use of the discovery in the foreign proceeding. We're arguing for procedural parity in the foreign proceedings for which discovery has been permitted to be used. So you go over to Bank of America, and you give them a 1782 subpoena, and you get them to produce records, and the other side says, well, we want some more discovery sort of willy-nilly. We're not going to use it in the proceeding that the 1782 proceeding obtains to. Can we do that? I mean, you're just saying, well, give us discovery. In this proceeding, just because you're getting you, the court are giving the other side discovery for use in a proceeding that is actually covered by the statute. That's right. We are the defendants in one of the relevant foreign proceedings. As a result of the 1782 ---- We're not a party to it. We've already established that, Sullivan and I. There are two proceedings, a Spanish court case where appellants are not parties. Only the company on which they serve on the board is a party. Separately, there's an ICC arbitration for which the Petitioner sought and was granted the ability to use this 1782 discovery, and in that arbitration, our clients, the appellants, are parties. They are defendants. Wait. You're saying the district court here permitted them to use it in the ICC proceeding? It's not quite right, right? They denied or declined your request that they be enjoined from using it in the ICC, right? Which was tantamount, in our view, to permitting them to use it in the ICC arbitration. And, in fact, currently it's being used in the ICC arbitration against our clients. And our clients ---- Objected to? I think that's ongoing in the tribunal. So it may or may not be used in the ICC proceeding? It's certainly being sought to be used. Well, we understand that. It was sought to be ---- it was identified as something that might be used there, and you opposed it. Now you're in Round 2 or 3 or wherever you are with the ICC, still opposing it, right? And our clients, the appellants, have been subjected to American-style discovery, depositions, sweeping document requests about their decision to terminate Apelli and his brother from the Koderi Company. And they've been completely denied reciprocal access to the appellee's own records that would legitimize their decision to terminate him, his own spending records. It was a termination over the appellee's use of company funds to hire fleets of luxury cars, personal chefs, chauffeurs. The appellants sought reciprocal discovery of Apelli's own spending records so that they could defend the legitimacy of the company's decision to terminate him and his brother, and that has been denied. Thank you. Good morning, Your Honors. May it please the Court. Could you speak up a little bit? Yes. Good morning, Your Honors. May it please the Court. Vincent Levy for the appellee. We are here on review for abuse of discretion of discovery order. The appellant has identified no factor that the district court overlooked with respect to their motion to deny reciprocal discovery for use in the litigation. They are, in fact, not parties. And as far as the arbitration is concerned, that is a function of the fact, as Judge Sotomayor denied a request for a protective order, an injunction. And it did so in part on the finding that, or on the basis rather, that there was nothing in the record that would show that the arbitrators would be unable to address any concerns that the Respondents here may have in the arbitration. Deferring to a foreign proceeding, even if it were proper to look at the arbitrators, as the arbitration, as a relevant proceeding, is perfectly permissible under this Court's cases and under the Supreme Court's case in Intel, where the Supreme Court said it is perfectly fine to defer to the foreign proceeding. In Uromipa, this Court said that the foreign proceedings remain, of course, the foreign tribunals will remain, of course, masters of their own domain. The only way, and that's at page 1101 of the report, the only way that the Court could conclude there's an abuse of discretion here would be to find that there's a requirement at law that the Court order reciprocal discovery, that a district court order reciprocal discovery. And that's a proposition that this Court rejected in the Maliff case, saying that there is no requirement for a district court to order reciprocal discovery. The decision of the district court here was supported by the record. There was no issue of fact or law that the district court overlooked. And we respectfully submit there is simply no basis to reverse the district court here on the standard review, which is for abuse of discretion. Unless the Your Honors have questions. How would you respond to the argument that there may be different considerations that may be relevant to granting the initial Section 1782 discovery versus reciprocal discovery? I think that the Court's jurisprudence says that the district court may consider whatever facts and factors it considers relevant. In the Kyobel case, 1782 case, the Court made clear that in granting discovery the intel factors are not exclusive and that a district court can consider whatever it deems relevant. And I think that's true as well for reciprocal discovery, that a district court can consider what it deems relevant, consistent with the statutory objectives of 1782, which are to provide an efficient means of discovery to foreign litigants and to show by example. Those are the twin aims of the statute. In the context of this particular case, what is the standard of review that is appropriate in that you've got a magistrate decision. Is that to be reviewed for clear error? This is not the typical case. I think the standard review remains abuse of discretion and factual issues are reviewed for clear error and legal conclusions are reviewed as a matter of law. I don't think that changes the analysis. It's, you know, one reading of the magistrate judge's order when the magistrate judge said that he had reviewed the district court's order on the motion to quash and on that basis concluded that the only relevant proceeding here was the litigation and not the arbitration, that he was in fact interpreting an order of the district court.  So at a minimum, the court should review it for clear error as it would any discovery order under 1782 and there may be an extra layer of deference. Now, do we have to get into the standard of review? Would the outcome be the same, whatever the standard of review would be? I think the outcome would be the same. Thank you. Thank you. Thank you, Your Honors. Just briefly, an argument was made that in this case the district court made a sound discretionary determination to leave procedural parity to the arbitrators in the ICC arbitration, but that was not actually the analysis that the district court engaged in. The analysis was whether allowing the discovery that a Pelley obtained to be used in the ICC arbitration would be contrary to the character and policies of the arbitration proceeding itself. It was not a parity analysis. The court did not at least expressly say it was leaving parity to the ICC tribunal to handle. Instead, based on this court's guidance, we believe that the parity determination should be made by the district court, something the district court failed to do here. There was also suggestion that for this court to rule in our favor, it would have to hold that there's a requirement in every case to order reciprocal discovery. That's not our position. We're asking for the limited holding that when considering procedural parity in the context of reciprocal discovery requests in 1782, the district court should consider the full suite of foreign litigation for which it's allowed the 1782 discovery to be used. Thank you. Thank you. Thank you both for your arguments. The Court will reserve decision.